PEARSON, MJ.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| DOROTHY D. BASHAW, | CASE NO. 3:08 CV 783 |
| Plaintiff, |  |
|  | JUDGE JAMES G. CARR |
| v. |  |
|  | MAGISTRATE JUDGE |
|  | BENITA Y. PEARSON |
| COMMISSIONER OF SOCIAL SECURITY, |  |
| Defendant. | **REPORT AND RECOMMENDATION** |

Plaintiff Dorothy D. Bashaw sought judicial review of the Social Security Administration's final decision denying her applications for Disability Insurance Benefits and Supplemental Security Income (collectively, "benefits"), pursuant to 42 U.S.C. § 405(g). Pending are the parties' briefs addressing the merits.

Finding that the decision denying benefits to Bashaw is not based upon proper legal standards and not supported by substantial evidence, this Court recommends that the Social Security Administration's ("Agency") final decision be reversed and that the case be remanded pursuant to Sentence Four of 42 U.S.C. § 405(g) for additional consideration by the Social Security Administration in a manner consistent with this opinion.

**I. Overview**

At the time the Administrative Law Judge ("ALJ") issued the final decision denying Bashaw benefits, it was largely undisputed that Bashaw was a 52 year-old woman with a tenth-

(3:08 CV 783)

grade education who had been stricken with severe physical impairments evidenced by hand and back pain. (Tr. 55, 231, 210-11, & 294.) Bashaw maintains a permanent driver's license and occasionally drives. (Tr. 308.)

At the date of her hearing before the ALJ, Bashaw's previous employment consisted primarily of having worked as a baker, cashier-wrapper, waitress, food sales clerk, production assembler, and routing clerk/mail sorter. (Tr. 21, 68-74, 137, & 316-17.)

The ALJ found Bashaw's residual functional capacity ("RFC") to be as follows:

> [T]he claimant has the residual functional capacity to perform work activity exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to ten pounds of force constantly to move objects; the claimant is able to occasionally climb ladders, ropes and scaffolds, handle and finger; the claimant is able to frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and the claimant is limited to simple repetitive tasks without any strict time or production requirements and involving only occasional contact with the public, coworkers and supervisors.

(Tr. 19.) Additionally, the ALJ found that Bashaw is "unable to perform any past relevant work." (Tr. 21.)

After reviewing the administrative record as a whole, including the medical and other evidence presented, and the legal standards applied, the Court finds (1) that the ALJ relied upon incorrect legal standards in making his determinations regarding Bashaw's credibility and whether to grant controlling authority to the opinion of her treating physician, and (2) that the ALJ's adoption of the State Agency physician's opinion (Tr. 185-89.) is not supported by substantial evidence. Concomitantly, the ALJ must reassess Bashaw's RFC, given that an accurate RFC assessment depends on appropriate determinations having been made regarding all relevant evidence.

-2-

(3:08 CV 783)

## II. Procedural History

Bashaw applied for benefits on August 11, 2003 and August 26, 2003, respectively, alleging disability caused by hand, back, and joint pain since October 15, 2001. The Agency, on January 23, 2004, determined that she was not disabled and not eligible for benefits. Upon reconsideration on April 16, 2004, the Agency again denied Bashaw benefits. Consequently, Bashaw requested and obtained a hearing before an ALJ on December 20, 2005, where she appeared with counsel and amended her alleged onset date of disability to September 9, 2003. The ALJ denied Bashaw benefits on November 1, 2006. Bashaw appealed to the Appeals Council which denied review on February 5, 2008 causing the ALJ's denial of benefits to be the final Agency decision.

Seeking a review of the Agency's final decision denying her benefits, Bashaw timely filed a Complaint with this Court and asserted the following issues[1]:

1. The Administrative Law Judge erred in rejecting the opinion of her treating physician contrary to SSR 96-2p (transcript p. 21);[sic]

2. The Administrative Law Judge's adoption of the medical opinion of the State Agency physician contained in Exhibit 9F is not supported by substantial evidence in the record (Transcript p. 21).

3. The Administrative Law Judge's finding that plaintiff's testimony is not entirely credible is not supported by substantial evidence in the record (transcript pp. 20-21).[sic]

ECF No. 17 at 2.

---

[1] Bashaw does not dispute the ALJ's findings regarding the severity of her psychological impairments. Therefore, the Court will not address the ALJ's findings or evidence regarding such impairments, alleged or otherwise.

(3:08 CV 783)

### III. Medical History

Considering Bashaw's amended alleged disability onset date[2] of September 9, 2003, Bashaw's medical history is as follows: On July 16, 2002, Dr. Nicolas Lopez, Bashaw's only treating physician of record, diagnosed her with osteoarthritis of the hand and wrist that was confirmed by x-ray. (Tr. 241.) On October 17, 2002, Dr. George C. Stepanic, Jr. examined Bashaw who complained of triggering of her middle and ring fingers and soreness at the base of both thumbs. (Tr. 145.) On September 9, 2003 and on Dr. Lopez' request, Dr. Frank C. Hui, an orthopedist, evaluated Bashaw for "painful triggering of the right middle and ring fingers." (Tr. 197.) Dr. Hui found stenosing tenosynovitis in the flexor tendon of Bashaw's right middle and ring fingers along with bilateral carpal tunnel syndrome. (Tr. 197.) Based upon Bashaw's complaint of pain related to the triggering of the right middle and ring fingers, Dr. Hui scheduled surgery to repair the tendons, which Bashaw underwent on October 1, 2003. (Tr. 196.) Dr. Hui also diagnosed degenerative arthritis in Bashaw's carpometacarpal joints (thumbs) for which he suggested that Bashaw use splints to help control the pain. (Tr. 196.)

---

[2] In her merit and reply brief, Bashaw mentions her concern that neither the ALJ nor Defendant acknowledged her amended onset date of September 9, 2003. Bashaw is concerned that Defendant "cites evidence pre-dating" the amended date. ECF No. 20 at 2. Why the ALJ and Defendant did not mention the amended date, the Court cannot determine. The Court can, however, state that if an ALJ finds a claimant to be disabled, then medical evidence that helps the ALJ determine the onset date of disability, whether before or after the claimant's amended date, may be considered if it is "relevant" to the impairment and "substantial." *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also* SSR 83-20, 1983 WL 31249 (discussing slowly progressive impairments: "[I]t will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.").

(3:08 CV 783)

Dr. Nicolas Lopez treated Bashaw prior to her alleged disability onset date through August 8, 2005. During that time period, the record shows that Dr. Lopez examined Bashaw approximately twelve times. (Tr. 200-18, 255-57.) Dr. Lopez' chart notes repeatedly mention Bashaw's complaints of neck, back, hand and thumb pain. On July 10, 2004, Bashaw had an MRI pursuant to Dr. Lopez' request. (Tr. 210.) The MRI results of the cervical and thoracic spine, evaluated by radiologist Dr. Ibrahimn Syed, revealed minor degenerative disk disease at C6-7, but were otherwise negative. (Tr. 210-11.) The MRI results of the lumbar spine, however, revealed moderate to severe facet arthrosis in the lower lumbar spine, but no evidence of stenosis or significant neural foraminal narrowing of the lumbar spine. (Tr. 211.)

On June 16, 2005, Dr. Donald Baker, an orthopedist, evaluated Bashaw's hands. Dr. Baker found "very severe osteoarthritis at the CMC joint of each thumb" while the remaining fingers and wrist were "fairly well preserved." (Tr. 249.) On June 24, 2005, Dr. Abdul-Azim Mustapha confirmed Dr. Baker's findings of bilateral CMC arthritis. (Tr. 263.) Subsequently, Dr. Mustapha performed a Burton's arthroplasty (thumb joint replacement surgery) on Bashaw's right hand on July 18, 2005 and on her left hand on January 9, 2006. (Tr. 260 & 281.)

### IV. Standard of Review

Judicial review of the ALJ's decision denying disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the ALJ properly applied relevant legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence is more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as

(3:08 CV 783)

a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Under 42 U.S.C. § 405(g), the findings of the ALJ are conclusive if they are supported by substantial evidence.

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535, 536 (6th Cir. 1981); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535 (6th Cir. 2001). The ALJ's decision must be affirmed if it is supported by substantial evidence even if the reviewing court would have decided the matter differently, and even if substantial evidence also supports a different conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). The substantial evidence standard presupposes that there is a "zone of choice" within which the Agency may proceed without interference from the courts. *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1150, 1149 (8th Cir.1984)). The district court may look into any evidence in the record, regardless of whether it has been cited by the ALJ. *Id.* The reviewing court, however, may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard*, 889 F.2d at 681; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### V. Law and Analysis

#### A. The ALJ Failed to Properly Evaluate the Medical Opinion Evidence

Bashaw alleges that the ALJ did not afford her treating physician's opinions the required deference. Specifically, Bashaw claims that the ALJ did not provide adequate reasoning in accordance with the treating physician rule (outlined below) in affording Dr. Lopez' opinions "no

(3:08 CV 783)

weight." ECF No. 17 at 8-12.  This assignment of error is well taken.

### 1. The Treating Physician Rule

Chief among the governing standards of the Sixth Circuit by which an ALJ must assess medical evidence is the treating physician rule.  This rule requires an ALJ give greater deference to the opinion of a treating physician than to those of non-treating physicians.  *See* SSR 96-2p; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  If the ALJ does not give the treating physician's opinion controlling weight, then the ALJ must consider several other factors in determining how much weight is appropriate.  Those factors include: (1) the length, frequency, nature, and extent of the treatment relationship; (2) consistency of the physician's conclusions and the evidence to support them; and (3) the specialization of the treating physician.  *See* *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).  The rule also creates "a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Id.* (*citing* SSR 96-2p).

An additional procedural requirement of the treating physician rule is that the ALJ must provide "good reasons" for discounting a treating physician's opinion with reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p; *see also Wilson*, 378 F.3d at 544.  The significance of this notice requirement is that it ensures a denied claimant receives fair process.  An ALJ's failure to follow this requirement of providing good reasons "for explaining precisely how those reasons affected the weight [afforded] the

-7-

(3:08 CV 783)

[physician's] opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243 (*citing Wilson*, 378 F.3d at 544). This Court will evaluate how the ALJ reached his conclusions regarding Bashaw's medical opinion evidence based upon these standards.

### 2. The Medical Opinion Evidence Relied upon and Discounted by the ALJ

The ALJ found that Bashaw suffers from three severe impairments: osteoarthritis, carpal tunnel syndrome, and depression. (Tr. 17.) The ALJ based his residual functional capacity assessment primarily on three different medical opinions, various objective medical tests, and Bashaw's testimony.

With respect to the medical opinion evidence, the ALJ found the opinion of Dr. William D. Padamadan, a State Agency consultative examiner, supportive of the ALJ's RFC and consistent with the "diagnostic" and "medical evidence" of record. (Tr. 20, 21, & 160.) Dr. Padamadan examined Bashaw on December 30, 2003 and found no "indication for limitation of physical activities." (Tr. 163.) Specifically, Dr. Padamadan found no evidence of "arthritis process" in Bashaw's upper extremities and opined that her "[h]istory of arthritis all over [was] without any clinical findings of significance." (Tr. 162.) Dr. Padamadan's examination constituted the Agency's only examination of Bashaw.

The ALJ adopted the opinions of Drs. Friar and Caldwell as "supported by the medical evidence of record." (Tr. 21 & 185-89.) Dr. Friar, a State Agency reviewing physician, completed an RFC assessment of Bashaw on January 20, 2004 that was primarily based on Dr. Padamadan's examination of December 30, 2003. (Tr. 186-87.) Dr. Friar found that Bashaw

-8-

(3:08 CV 783)

could occasionally lift, carry or pull 50 pounds; frequently lift, carry or pull 25 pounds; stand or walk about 6 hours in an 8-hour day; sit for a total of about 6 hours in an 8-hour day; and, could operate hand and/or foot controls without limitation in either the upper or lower extremities. (Tr. 186.) Dr. Friar found Bashaw's allegations of pain and physical limitations only partially credible because her "[s]ymptoms [are] not consistent with MER [medical evidence of record]." (Tr. 189.) Dr. Friar also disagreed with Bashaw's treating physician's conclusions and restrictions (discussed below) as "not consistent with MER." (Tr. 189.) Dr. Willa L. Caldwell, a State Agency reviewing physician, reviewed and affirmed Dr. Friar's findings on April 14, 2004. (Tr. 189.)

The ALJ, in his written opinion, listed Dr. Lopez' (Bashaw's treating physician) diagnoses of Bashaw and also the types of medications he prescribed for her treatment of these conditions.[3] (Tr. 20.) The ALJ also mentioned Dr. Lopez' opinion that Bashaw is permanently and totally disabled. (Tr. 20.) Referring to a report prepared by Dr. Lopez on October 25, 2005 wherein Dr. Lopez opined that Bashaw can lift no weight, the ALJ found this medical opinion to be "exaggerated." (Tr. 21.) Additionally, the ALJ discounted Dr. Lopez' opinion that Bashaw is "permanently and totally disabled," as "an opinion reserved to the Commissioner in accordance with SSR 96-5p." (Tr. 21.) The ALJ concluded his analysis of Dr. Lopez' opinions with: "Therefore, no weight is accorded [sic] to the medical opinion of Dr. Lopez." (Tr. 21.)

---

[3] In an open letter dated July 29, 2004, Dr. Lopez listed that Bashaw "suffers from osteoarthritis of knees, back, and hips, chronic pain syndrome, hypertension, low back syndrome, DeQuervain's of bilateral thumbs and cervical, dorsal, lumbosacral spine strain with radiculopathy." (Tr. 209.) The types of medication included "anti-inflammatory, analgesic, muscle relaxant, and pain medications." (Tr. 209.)

(3:08 CV 783)

### 3. Analysis of the ALJ's Treatment of the Medical Opinion Evidence

Social Security Regulations require the ALJ to evaluate every medical opinion of record regardless of its source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). The required evaluation first addresses treating physicians or psychologists, whose opinions are entitled to controlling weight under the treating physician rule as long as they are well supported by medically acceptable data and not inconsistent with other substantial evidence of record. 20 C.F.R. §§ 404.1527(d), 416.927(d); *see Wilson*, 378 F.3d at 544. If these requirements are not met, then the treating physician rule does not apply. *Wilson*, 378 F.3d at 544.

The ALJ's conclusion that the treating physician rule does not apply to a particular treating source's opinion marks only the beginning of the evaluation. The ALJ must continue to evaluate the treating source's opinion by considering several additional factors. Those factors include the nature and extent of the treatment relationship, the supportablility of the opinion, the consistency of the opinion with the record as a whole; the specialization, if any, of the treating source; and other factors brought to the ALJ's attention. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6); *see Wilson*, 378 F.3d at 544.

The ALJ must evaluate the opinions of non-treating sources, *e.g.*, one-time examiners or medical experts who testify during the administrative hearing, under the same factors applicable to treating medical sources — supportability, consistency, specialization, *etc*. *See* 20 C.F.R. §§ 404.1527(d), (f), 416.927(d), (f).

In the instant case, the ALJ gave "no weight" to the opinion of Dr. Lopez, Bashaw's treating physician, that Bashaw can lift no weight and is permanently disabled because the ALJ

-10-

(3:08 CV 783)

found the opinion to be exaggerated and that the determination of disability is reserved to the Commissioner. (Tr. 21.) With respect to the ALJ's finding that the determination of disability is reserved to the Commissioner, the Court concurs. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Furthermore, that the ALJ found Dr. Lopez' opinion to be "exaggerated" is a proper factor to use in the evaluation of Dr. Lopez' opinions, but it is not the only factor and does not respond to each opinion Dr. Lopez presented.[4]

The ALJ did not indicate in his decision whether he considered any of the other factors (as detailed above) when weighing Dr. Lopez' opinions, especially the opinion the ALJ specifically discredited. While Dr. Lopez' opinion that Bashaw can lift no weight *may be* exaggerated, Dr. Lopez presented numerous other opinions concerning Bashaw's physical status that the ALJ did not address in his written opinion. Thus, the ALJ's decision to give no weight at all to Dr. Lopez' other opinions is improper. Additionally, the ALJ's rejection of Dr. Lopez' opinion for the sole reason it was exaggerated, sidesteps the reason-giving requirements of the Regulations. The Regulations promise claimants not only an explanation but a "good explanation . . . for the weight we give [the claimant's] treating source's opinions." *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The Sixth Circuit has explained the reason-giving requirement accomplishes two goals:

> First, the explanation lets claimants understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that she

---

[4] Dr. Lopez examined Bashaw nine times from September 3, 2003 to February 3, 2005. *See* (Tr. 199-213.) Dr. Lopez documented each examination and visit with detailed treatment notes containing additional medical opinions of Bashaw's physical health.

-11-

(3:08 CV 783)

>is not, unless some reasons for the agency's decision is supplied.  Second, the explanation ensures that the ALJ applies the treating physician rule and permits meaningful appellate review.

Rogers, 486 F.3d at 242-43 (quoting in part Wilson, 378 F.3d at 544) (internal punctuation omitted).  Because the ALJ merely applied one regulatory factor to reject Dr. Lopez' opinions, his decision was contrary to the reason-giving mandate set forth in the Commissioner's Regulations.

Rather than relying on treating physician opinion, the ALJ relied on the opinions of the State Agency examining and reviewing physicians, Drs. Padamadan, Friar, and Caldwell.  (Tr. 21.)  The ALJ's decision, however, did not apply the factors described in the Regulations to the opinions of the State Agency examining and reviewing physicians upon whom he relied, except to find that the opinions are more consistent with or supported by the medical evidence.  This, too, was error, since in the absence of an opinion that deserves controlling weight, all medical source opinions, including the opinions of one-time examining and record-reviewing physicians must be weighed under the regulatory factors, including supportability, consistency, and specialization.  *See*  20 C.F.R. §§ 404.1527(d), (f), 416.927(d), (f); *see also* SSR 96-6p.

Furthermore, while the Court does not require a perfect opinion, it does ask for a logically consistent one.  *See Wilson,* 378 F.3d at 544-46 (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion); *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996) ("we cannot uphold a decision by an administrative agency . . . if, while there is enough evidence in

-12-

(3:08 CV 783)

the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.").

In this case, the ALJ stated the opinions of the State Agency examining and reviewing physicians, Drs. Padamadan, Friar, and Caldwell, were more consistent with or were supported by the diagnostic and medical evidence of record.  (Tr. 21.)  The record before the Court does not support this conclusion.  These medical opinions were completed on December 30, 2003, January 20 and April 14, 2004, respectively.  Dr. Padamadan found no evidence of "arthritis process" in Bashaw's upper extremities and opined that her "[h]istory of arthritis all over [was] without any clinical findings of significance."  (Tr. 162.)  Dr. Friar, with whom Dr. Caldwell concurred, opined that Bashaw's claims of impairment and Dr. Lopez' diagnoses were not consistent with the medical evidence of record.  (Tr. 185-89.)

On review of the record the Court finds that after these reports were issued, an MRI revealed moderate to severe facet arthrosis in the lower lumbar spine on July 10, 2004.  (Tr. 210-11.)  On June 16, 2005, an orthopedist diagnosed Bashaw with "very severe osteoarthritis at the CMC joint of each thumb" that was confirmed by another orthopedist on June 24, 2005.  (Tr. 249 & 263.)  Following this diagnosis, Bashaw underwent thumb joint replacement surgery on her right hand on July 18, 2005 and on her left hand on January 9, 2006.  (Tr. 260 & 281.)   An "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."  Loza v. Apfel, 219 F.3d 378, 393 (5th Cir. 2000) (citing Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984)); see also Kuleszo v. Barnhart, 232 F.Supp.2d 44, 57 (S.D.N.Y. 2002).

-13-

(3:08 CV 783)

The Court also finds that, given the diagnoses and surgeries that occurred *after* the relied upon State Agency reports had been issued, the ALJ's reliance on these State Agency reports was misplaced.  Likewise, a review of Dr. Lopez' opinions does not reveal that his opinions were "so patently deficient that the [ALJ] could not possibly credit [them] . . . ."[5]  *Wilson*, 378 F.3d at 547.

Accordingly, Bashaw's challenges to the ALJ's evaluation of the medical source opinions of record are well taken and Bashaw's request for remand is appropriate.

### B. The ALJ Failed to Properly Evaluate Bashaw's Credibility

It is not the function of a reviewing court to determine the credibility of the claimant. *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987).  Credibility determinations regarding a claimant's subjective complaints rest with the ALJ.  *See Hopkins v. Comm'r of Soc. Sec.*, 96 Fed.Appx. 393, 395 (6th Cir. 2004) (*citing Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)).  The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly.  *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).

When an individual alleges disabling symptoms, 20 C.F.R. §§ 404.1529, 416.929 requires the ALJ to follow an outlined process for evaluating these symptoms.  First, the ALJ

---

[5] The Commissioner, in his brief to the Court, provides a detailed review of the medical opinion evidence and, at least, his impressions of how it relates to the opinions of the treating and State Agency physicians and concludes that the ALJ was correct in rejecting Dr. Lopez' opinions and relying on Drs. Padamadan, Friar, and Caldwell's opinions.  The ALJ, however, did not provide the same analysis.  Therefore, such a recitation is purely conjecture upon the part of counsel and cannot serve as the basis for review by a court.  *See Watford v. Apfel*, No. 1:00 CV 00004, p. 13 (N.D. Ohio April 24, 2001); *see also NLRB v. Kentucky River Cmty. Care, Inc.*, 532 U.S. 706, 715 n.1 (2001) (counsel's *post hoc* rationalizations are not substituted for the reasons supplied by the administration).

-14-

(3:08 CV 783)

must determine whether objective medical evidence supports the claimant's allegations regarding the disabling effects of the impairment. *Id.* If the ALJ finds that the objective medical evidence does not support the claimant's allegations, then the ALJ may not simply reject the claimant's statements, but must consider them in light of the entire record. *Id.* In assessing the credibility of statements, the ALJ must look to the relevant evidence in the record. *See* SSR 96-7p. In addition to the medical evidence, the ALJ should consider seven factors, as they may be relevant to a particular claim. The seven factors are: (1) individuals daily activities; (2) location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p. Generally, the ALJ need not analyze all seven factors, but should make clear that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

The credibility determination must contain specific reasons for the finding, "supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight." SSR 96-7p; *see also Cross*, 373 F. Supp. 2d at 733. Additionally, SSR 96-7p instructs: "The finding on credibility of an individual's statements cannot be based on

-15-

(3:08 CV 783)

an intangible or intuitive notion about an individual's credibility.  The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."

According to 20 C.F.R. § 402.35(b)(1), Social Security Rulings "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the Social Security Administration and "are binding on all components of the Social Security Administration." *Sykes v. Apfel*, 228 F.3d 259, 271 (3d Cir. 2000); *see also Wilson*, 378 F.3d at 544 (noting that a federal agency is obliged to abide by the regulation it promulgates).  In *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994), the Sixth Circuit made it clear that the ALJ cannot merely recount the medical evidence and claimant's daily activities and then without analysis summarily conclude that the testimony lacked credibility.

The ALJ's credibility determination in this case did not comport with the above standards.  The ALJ found Bashaw's testimonial statement that "she is limited to lifting five pounds" to be "less than fully credible."  (Tr. 20.)  The ALJ supported this finding by stating only that the "medical evidence does not support such a restricted ability to lift."  (Tr. 20.)  The ALJ also buttressed his credibility finding with the State Agency RFC assessment completed by Dr. Friar.  (Tr. 20.)

Because the Court finds the ALJ's reliance on Dr. Friar's RFC was not consistent with the medical evidence of record as a whole (discussed above), the ALJ's credibility determination is insufficient.  Whether the medical evidence supports Bashaw's testimony depends on a proper credibility finding made according to the step-by-step procedure outlined above.  Accordingly, the Court does not make a determination regarding Bashaw's credibility, that determination is

-16-

(3:08 CV 783)

made appropriately by the ALJ. Rather, the Court finds that the ALJ's credibility determination does not satisfy SSR 96-7p because the ALJ's "reasons for the credibility finding [were not] grounded in the evidence and articulated in the determination or decision" nor were the reasons "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight." SSR 96-7p.

### C. Reassessment of Bashaw's Residual Functional Capacity is Required

Because the ALJ did not apply the proper legal standards for evaluating Bashaw's treating physician's opinions and her credibility, the Court finds those determinations were insufficient to constitute substantial evidence. It follows therefore, that the ALJ's assessment of Bashaw's RFC is flawed because the RFC is based upon "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Accordingly, the ALJ must reassess Bashaw's RFC after proper reconsideration of the weight given to all the medical opinion evidence and her credibility. After the new RFC finding has been made, then the ALJ may continue the sequential analysis accordingly, *e.g.*, posing an appropriate hypothetical to the vocational expert in support of a disability determination at either Step Four or Step Five.

### VI. Conclusion and Recommendation

Finding that the decision denying benefits to Bashaw is not based upon proper legal standards and not supported by substantial evidence, this Court recommends that the Social Security Administration's ("Agency") final decision be reversed and that the case be remanded pursuant to Sentence Four of 42 U.S.C. § 405(g) for additional consideration by the Social Security Administration in a manner consistent with this opinion.

-17-

(3:08 CV 783)

Specifically, the Court recommends that the ALJ's decision (1) that Bashaw's testimony is not entirely credible, (2) that the State Agency physicians' opinions are most consistent with the medical evidence of record, and (3) that her treating physician's opinions are accorded no weight be reversed and the matter remanded, pursuant to the Fourth Sentence of 42 U.S.C. § 405(g) with instructions that, upon remand, the ALJ evaluate Bashaw's credibility and the medical opinion evidence in a manner consistent with this opinion and Sixth Circuit law, in order to properly determine whether Bashaw's testimony is credible and what weight, if any, should be given to the opinions of her treating physician and the State Agency physicians.

Accordingly, since the ALJ's assessment of Bashaw's residual functional capacity is driven by his consideration of *all* of the relevant medical and other evidence, the ALJ's residual functional capacity finding and its use in concluding that Bashaw could perform other work that exists in significant numbers in the national economy is flawed and must be revisited.

The undersigned also recommends that referral be terminated.

Dated: June 18, 2009          s/ *Benita Y. Pearson*
        United States Magistrate Judge

### OBJECTIONS

Objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* United States v. Walters, 638 F.2d 947 (6th Cir. 1981). *See also* Thomas v. Arn, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).